599 F.2d 927
 EL PASO NATURAL GAS COMPANY, Plaintiff-Appellant-Cross-Appellee,
v.
WESTERN BUILDING ASSOCIATES, a partnership, R. L. Kysar, W.
M. Gallaway, B. J. Baggett, and Perkins & Co., a
New Mexico Corporation,
Defendants-Appellees-Cross-Appellants.
 Nos. 77-1420, 77-1421.
 United States Court of Appeals,
Tenth Circuit.
 May 30, 1979.
 
 John B. Pound, Santa Fe, N. M. (Gary R. Kilpatric and Montgomery, Andrews & Hannahs, Santa Fe, N. M., on the brief), for appellant-cross-appellee.
 John R. Cooney, Albuquerque, N. M. (Mark B. Thompson, III, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., and James B. Cooney and Scott M. Curtis, of Cooney & Curtis, Farmington, N. M., on the brief), for Western Bldg. Associates, appellee-cross-appellant.
 Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is a suit for specific performance of an option to purchase agreement granted on certain property located in Farmington, New Mexico. The trial court decreed specific performance, but only as to a portion of the realty sought. Both parties now appeal.
 
 
 2
 In 1969, R. L. Kysar, W. M. Galloway and B. J. Baggett formed Western Building Associates, a partnership. The partnership was formed for the purpose of purchasing a building known as the Petroleum Club Plaza Building in Farmington, New Mexico from the First National Bank of Boston, Massachusetts. The building was situated on a tract of land consisting of some 8.08 acres. The conveyance from the Boston bank to Western referred to the property as being 8.08 acres and contained a legal description of the property thus conveyed, together with all buildings and other improvements thereon.
 
 
 3
 At the time that Western acquired the property from the Boston bank in 1969, El Paso Natural Gas Co., a Delaware corporation, leased space in the Petroleum Club Plaza Building. Negotiations followed between El Paso Natural Gas Co. and Western concerning a possible long term lease. These negotiations culminated in the execution by El Paso and Western on December 23, 1969, of a five-year lease, with certain options to renew and to acquire additional space within the building. The lease also contained an option to purchase, and it is the option to purchase which generates the present controversy. That option provides as follows:
 
 
 4
 VI. OPTION TO PURCHASE.
 
 
 5
 Section 6.1. Lessor hereby grants unto Lessee the exclusive right and option to purchase all right, title and interest in and to Petroleum Club Plaza Building comprising 8.08 acres of land, more or less, and all appurtenances, facilities, equipment and hereditaments thereunto belonging subject to attorney's title opinion showing good and merchantable fee simple title to the premises in Lessor for a total consideration of $850,000.00 in cash; provided, however, this option shall be effective during a one hundred twenty (120) day period following the expiration of the initial term of this Lease. In the event Lessee exercises this option to purchase, this Lease shall terminate as of the date title vests in Lessee.
 
 
 6
 In October, 1974, El Paso renewed its lease for a second five-year period. Thereafter El Paso notified Western by registered letter, dated February 27, 1975, that it was exercising its option to purchase the property. Western declined to convey, and this litigation followed.
 
 
 7
 Trial of this matter was to the court, sitting without a jury. Certain matters such as the value of permanent improvements made by Western during the lease period, interim rents and profits and the like, were referred to a Special Master. By its final judgment and order, the trial court decreed specific performance to a part but not to all of the 8.08 acre tract, and otherwise attempted to do equity between the parties. As indicated, El Paso now appeals and Western cross-appeals.
 
 
 8
 The cornerstone of the trial court's judgment is its conclusion that the option to purchase as a matter of law "was intended . . . to mean the building and the appurtenances, facilities, equipment and parking facilities" and that "(t)he remainder of the 8.08 acres of land was not subject to the option exercisable by El Paso." In other words, the trial court concluded that the option was clear and unambiguous and by its own terms granted the right to purchase the Petroleum Club Plaza Building, its parking lot, and a small perimeter around the building, and that the option was not one to purchase the entire 8.08 acre tract and the building located thereon.
 
 
 9
 It is to be emphasized that the trial court found As a matter of law that the option to purchase did not run to the entire 8.08 acre tract and to the building situate thereon, but only to the building itself and to a small area of land immediately adjacent thereto. This is not an instance where a trial judge found an ambiguity in an option to purchase agreement and then received extrinsic evidence and made findings of fact in connection therewith. Rather, the trial judge specifically rejected offers of proof as to the intent of the parties, and by his final judgment and order made it clear that he was concluding, as a matter of law, that the option to purchase was itself clear and unambiguous and by its own terms did not run to the entire tract of 8.08 acres, but only to a smaller area of approximately 4 acres. In thus concluding, the trial court in our view erred.
 
 
 10
 Although it is of no particular significance, we do note, however, that Western did not assert, as an alternative defense, that the option ran only to a 4 acre tract, and not to the entire tract of 8.08 acres. The trial court apparently reached this interpretation of the option agreement Sua sponte. Be that as it may, we are unable to see how a fair reading of the option agreement permits the conclusion that, as a matter of law, the option runs only to the building, and the ground upon which it sits, plus some adjacent parking area. The language of the option agreement simply does not permit such legal conclusion. A contract may not be given a meaning which the language of the contract itself does not permit. Rigsby v. Mutual of New York, 331 F.2d 353 (10th Cir. 1964); Reliance Ins. Co. v. Jones, 296 F.2d 71 (10th Cir. 1961); and New York Life Ins. Co. v. Atkinson, 241 F.2d 674 (10th Cir.), Cert. denied, 353 U.S. 959, 77 S.Ct. 865, 1 L.Ed.2d 910 (1957).
 
 
 11
 The trial court, by its final judgment, not only decreed specific performance as to the smaller tract and denied specific performance as to the remainder of the tract, but also made certain adjustments to the $850,000 purchase price called for in the option agreement. These adjustments, for example, reflected the value of certain permanent improvements made by Western prior to the exercise of the option by El Paso, accounted for interim rents and profits and decreed which fixtures and equipment were to be conveyed with the building. Throughout, the trial judge had attempted, and commendably so, to "do equity" between the parties, and the adjustments to which we referred were obviously related to the trial court's major premise that the option did not run to the entire 8.08 acres. Such being the case, it becomes necessary to reverse the entire judgment, since a determination as to whether the option to purchase runs to only a part of the 8.08 acre tract, or all of it, may conceivably, under the approach taken by the trial judge, have a significant bearing on the other related issues. The erroneous legal conclusion by the trial judge that the option runs only to the building was the linchpin of his decision, and when the linchpin fails, so must the balance of the judgment. It is for this reason that the entire judgment entered by the trial court is reversed.
 
 
 12
 In sum, the option agreement granted the right to purchase a building comprising 8.08 acres, and the trial court erred in concluding that As a matter of law such language only granted the right to purchase a building comprising 4 acres. This is our only holding in the present appeal. There must be a proper interpretation of the terms of the option agreement before other issues can be reached. Whether there is an ambiguity presented on the face of the option is a matter that should first be considered by the trial court.
 
 
 13
 Judgment reversed and case remanded for further proceedings consonant with the views herein expressed.