**COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts corporation, Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Julian P. Oxford and Charlotte A. Oxford, Defendants.**

**Civ. A. No. 81–Z–1635.**

United States District Court, D. Colorado.

Sept. 10, 1982.

Richard H. Glasman, Glasman, Jaynes. & Carpenter, Denver, Colo., for plaintiff.

Richard W. Laugesen, Demoulin, Anderson, Campbell & Laugesen, Denver, Colo., for State Farm Fire and Cas. Co.

William V. Hodges, III, Carbondale, Colo., for Julian P. Oxford.

Charles J. Traylor, Peter R. Black, Traylor, Palo, Cowan & Arnold, Grand Junction, Colo., for Charlotte A. Oxford.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

WEINSHIENK, District Judge.

Early in the morning of June 14, 1981, defendant Julian Oxford poured gasoline on the living room carpet and set fire to the family home in Glenwood Springs, Colorado. At that time his wife, defendant Charlotte Oxford, was in Grand Junction, Colorado, and the couple's three children were at summer camp. Defendant State Farm Fire and Casualty Company (State Farm) carried an insurance policy on the Oxford home which had never been cancelled, although the Oxfords had obtained replacement coverage from plaintiff Commercial Union Insurance Company (Commercial Union) several months before the fire. Plaintiff Commercial Union brings this action to determine whether defendant Julian Oxford's act negated insurance liability, and, if it did not, to determine which insurance carrier is liable.

This matter is before the Court on cross motions for summary judgment by defendant Charlotte Oxford and plaintiff Commercial Union. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. Having reviewed the pleadings and briefs as well as the relevant case law, the Court is fully advised and prepared to rule, as there appears to be no contested issue of material fact between Commercial Union and each of the Oxfords.

As a potential insurance carrier on the home, the detached structures and the personal property, Commercial Union has denied the loss claims of Charlotte Oxford. It seeks summary judgment against both Julian and Charlotte Oxford. Commercial Union's claim denial and summary judgment motion are both based on its assertion that Julian Oxford's intentional arson bars any recovery under the policy. Conversely, Charlotte Oxford asserts that as a non-culpable co-insured, she is entitled to half the policy limits on the joint property and complete reimbursement for herself and her children for their separate property and additional living expenses.

The sole issue before the Court at this time is whether Julian Oxford's act of arson voids coverage as to both himself and Charlotte Oxford. Resolution of this question depends upon the interpretation given to the language of the policy and upon a choice between two lines of authority developed in consideration of similar claims.

The relationship between Commercial Union and the Oxfords arises under a typical homeowners' insurance policy. This policy lists "Julian P. Oxford and Charlotte A. Oxford" as the "named insured" on the "Declarations" page. In the "Definitions" section it states:

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. . . .

. . . . .

3. "insured" means you and the following residents of your household:
 a. your relatives;
 b. any other person under the age of 21 who is in the care of any person named above.

Section I of the policy insures against real and personal property losses and additional expenses incidental to such losses. The "Perils Insured Against" include "all risks of physical loss" to real property and "fire or lightning" losses to personal property. Among the Section I "Exclusions" is the following:

We do not cover loss resulting directly or indirectly from:

. . . . .

5. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of loss, or when property is endangered by a Peril Insured Against.

Section II of the policy covers personal liability and medical payments to others. Section II specifically states:

Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

 An insurance policy is a contract and the same rules of construction applicable to other contracts are applicable to insurance policies. *New York Life Insurance Co. v. Atkinson,* 241 F.2d 674 (10th Cir. 1957), *cert. denied* 353 U.S. 959, 77 S.Ct. 865, 1 L.Ed.2d 910 (1957). Insurance policies are to be construed with a view to carrying out the intention of the parties.

Where there is an ambiguity or uncertainty with respect to coverage, construction will favor the insured. *United Bank of Pueblo v. Hartford Accident & Indemnity Co.,* 529 F.2d 490 (10th Cir. 1976). Here Commercial Union intended to provide, and each of the Oxfords intended to purchase, loss indemnification. Commercial Union asserts that it intended the entire policy be void if either of the co-insureds acted in such a way as to come within the policy "neglect" exclusion, quoted above. Such a condition is not clearly expressed in the policy.

Generally "[w]ords or terms in an insurance policy are to be construed according to their plain, ordinary and accepted sense in the common speech of men unless it affirmatively appears from the policy that a different or special meaning was intended." *New York Life Insurance Co. v. Atkinson,* 241 F.2d at 676. Commercial Union asserts that the insurance rights and obligations of these co-insureds are joint, not several. Reviewing the provisions of this policy, it is not evident that the Oxfords have made a contract as one collective entity so that their rights and obligations are joint. There is no indication that the policy was issued to a single entity. The words "joint" or "jointly" do not appear in the policy. Both Charlotte Oxford and Julian Oxford are "named insured[s]"; both are included in the policy definition of "insured." Had Commercial Union actually intended that the misconduct of any insured would void the policy, it could have unambiguously drafted such language. *See Ryan v. MFA Insurance Co.,* 610 S.W.2d 428 (Tenn. App. 1980), *cert. denied* by Tenn. S.Ct.

"[I]f the terms of a policy are ambiguous, obscure, or fairly susceptible to two reasonable interpretations, one favorable to the insured and the other to the insurer, the former will be adopted." *New York Life Insurance Co. v. Atkinson,* 241 F.2d at 676. *See also United Bank of Pueblo v. Hartford Accident & Indemnity Co.,* 529 F.2d 490 (10th Cir. 1976). Commercial Union asserts two arguments to bar recovery by both Julian and Charlotte Oxford based on the language of the policy. First, the policy

provides for recovery by an innocent mortgagee when the mortgagor-insured's claim is denied,[1] but does not so provide for innocent co-insureds, indicating an intent not to provide coverage. Second, it similarly argues that since Section II provides for severability and Section I does not, that Section I is joint in all its obligations and rights. Neither of these interpretations would be apparent to a layman reading an insurance policy. Both points are fairly susceptible to an interpretation different from that which Commercial Union urges. Since construction must favor coverage of the insured in such situations, the Court finds that the rights and obligations under this policy are several, and not joint.

Although this set of circumstances presents a question of first impression in Colorado, it has been considered in other jurisdictions, resulting in the development of two distinct lines of authority. The minority view followed in at least seven states,[2] previously the majority view, denies an innocent spouse recovery either because the underlying property ownership is an indivisible tenancy by the entirety, *see, e.g., Cooperative Fire Insurance Association of Vermont v. Domina,* 137 Vt. 3, 399 A.2d 502 (1979), or because the wrongdoing of one spouse is imputed to the other under a theory of oneness of the married couple, *see, e.g., Rockingham Mutual Ins. Co. v. Hummel,* 219 Va. 803, 250 S.E.2d 774 (1979).

The present majority view, followed in at least thirteen states,[3] allows an innocent or divorced spouse to recover even though the co-insured spouse is at fault. The majority view courts reason that policy language excluding coverage must be explicit, *see, e.g., American Economy Insurance Co. v. Liggett,* 426 N.E.2d 136 (Ind. 1981), or that what is in question is the spouse's interest in the insurance policy, not the interest in the real property, *see, e.g., St. Paul Fire and Marine Insurance v. Molloy,* 291 Md. 139, 433 A.2d 1135 (1981), or that the fault of the wrongdoing spouse cannot be imputed to the innocent spouse, *see, e.g., Howell v. Ohio Casualty Insurance Co.,* 124 N.J.Super. 414, 307 A.2d 142 (1973), aff'd 130 N.J.Super. 350, 327 A.2d 240 (1974).

■ Traditional and archaic reasons for denying coverage when co-insureds are husband and wife must be rejected. In Colorado the separateness of spouses is clearly established by Colorado's Equal Rights Amendment, Constitution of Colorado, Art. II, § 29, and by the Married Women Act, C.R.S. (1973) § 14–2–201 *et seq.* The law no more permits the legal consequences of an arson to be imposed on an innocent spouse than it would allow the legal consequences of any other felony to be imposed on the innocent partner. Even if the underlying property ownership were relevant, the unilateral act of arson by a co-tenant

1. The policy reads in pertinent part: "Section 1—Conditions ... 12.... If we deny your claim, that denial shall not apply to a valid claim of the mortgagee ...."

2. *Kosior v. Continental Ins.,* 299 Mass. 601, 13 N.E.2d 423 (1938); *Short v. Oklahoma Farmers Union Insurance Co.,* 619 P.2d 588 (Okl. 1980); *Mele v. All-Star Ins. Corp.,* 453 F.Supp. 1338 (E.D. Pa. 1978) (applying Pennsylvania law); *Bridges v. Commercial Standard Ins. Co.,* 252 S.W.2d 511 (Tex. Civ. App. 1952); *Jones v. Fidelity & Guaranty Ins. Corp.,* 250 S.W.2d 281 (Tex. Civ. App. 1952); *Cooperative Fire Ins. Ass'n. of Vermont v. Domina,* 137 Vt. 3, 399 A.2d 502 (1979); *Rockingham Mutual Ins. Co. v. Hummel,* 219 Va. 803, 250 S.E.2d 774 (1979); *Klemens v. Badger Mut. Ins. Co.,* 99 N.W.2d 865 (Wis. 1959).

3. *Hosey v. Seibels Bruce Group, S.C. Ins. Co.,* 363 So.2d 751 (Ala. 1978); *Arenson v. National Automobile & Casualty Ins. Co.,* 45 Cal.2d 81, 286 P.2d 816 (1955); *Steigler v. Insurance Company of North America,* 384 A.2d 398 (Del. 1978); *Everglades Marina Inc. v. American Eastern Dev. Corp.,* 374 So.2d 517 (Fla. 1979); *Economy Fire & Cas. Co. v. Warren,* 71 Ill. App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979); *Hildebrand v. Holyoke Mut. Fire Ins. Co.,* 386 A.2d 329 (Me. 1978); *Morgan v. Cincinnati Ins. Co.,* 411 Mich. 267, 307 N.W.2d 53 (1981); *Lovell v. Rowan Mutual Fire Insurance Co.,* 302 N.C. 150, 274 S.E.2d 170 (1981); *Hoyt v. New Hampshire Fire Ins. Co.,* 29 A.2d 121 (N.H. 1942); *Howell v. Ohio Casualty Ins. Co.,* 124 N.J.Super. 414, 307 A.2d 142 (1973), aff'd on appeal 130 N.J.Super. 350, 327 A.2d 240 (1974); *Delph v. Potomac Ins. Co.,* 95 N.M. 257, 620 P.2d 1282 (1980); *Winter v. Aetna Cas. & Sur. Co.,* 96 Misc.2d 497, 409 N.Y.S.2d 85 (1978); *Ryan v. MFA Mutual Insurance Co.,* 610 S.W.2d 428 (Tenn. 1980), cert. denied by Tenn. S.Ct.

destructive of the other co-tenant's right of possession would destroy the joint tenancy in which the Oxfords' home was held. *See First National Bank of Southglenn v. Energy Fuels Corp.,* 618 P.2d 1115, 1118 (Colo. 1980). This Court agrees with the reasoning expressed in the majority of cases, cited in footnote 3, and will follow the modern view.

■ Fundamental public policy prohibits a wrongdoer from profiting from his own wrongful acts. This public policy is protected by denying any coverage to Julian Oxford, who did not contest Commercial Union's Motion for Summary Judgment. The plaintiff's motion will therefore be granted as to him.

Because the guilty spouse and innocent spouse remain married in this case, however, there may be some additional public policy consideration of whether the wrongdoer may indirectly benefit from a recovery by the innocent spouse and children. It is the Court's view that in balancing the equities of the case at bar, the facts and circumstances favor the payment to the innocent spouse and children. They have lost indemnified property from an event that is fortuitous as to them. Prevention of this unforseeable event by any of them was not possible since there was apparently no precedent for this act of arson in Julian Oxford's life. Nor is there any profit to the wrongdoer in the sense of advantage or gain. As the Court stated in *Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange,* 267 Cal. App.2d 381, 73 Cal.Rptr. 182, 186 (1968):

> Mere family relationship to the arsonist which does not bestow a property right or other direct financial benefit in the proceeds of insurance does not bar a recovery.

Here the only benefit to the arsonist is an indirect one whereby his spouse and children recover what the spouse and children had already owned and insured. The wrongdoer has no gain, advantage or recovery of what he owned prior to the fire.

Commercial Union has not opposed Charlotte Oxford's proposed measure of recovery, only her claim to any recovery. Therefore, it is

ORDERED that plaintiff Commercial Union's Motion for Summary Judgment as to the defendants Julian P. Oxford and Charlotte A. Oxford is granted as to Julian P. Oxford and denied as to Charlotte A. Oxford. It is

FURTHER ORDERED that defendant Charlotte Oxford's Motion for Summary Judgment is granted and she is entitled to recover the following subject to proof:

1) The lesser of one-half the policy limits under coverage A or one-half the replacement cost of the "residence premises."

2) The lesser of one-half the policy limits under coverage C or one-half the replacement cost of the "named insureds'" joint personal property.

3) All of the replacement cost of:

a) Charlotte Oxford's personal property, and

b) The Oxford children's personal property.

4) All of Charlotte Oxford's and the children's "additional living expenses" under coverage D of the policy.

5) One-half of whatever is due under the "additional coverages" provisions of the policy.