ROBERT KRUPP, Plaintiff, and MARY KRUPP, Respondent, v AETNA LIFE & CASUALTY CO., Also Known as AETNA CASUALTY & SURETY COMPANY, Appellant.

Second Department, September 4, 1984

APPEARANCES OF COUNSEL

*Whitman & Ransom* (*Joseph V. McCarthy* and *Frederick R. Mindlin* of counsel), for appellant.

*Blumberg, Fitzgibbons & Blumberg* (*Cruser, Hills, Hills & Besunder* [*Harvey B. Besunder*] of counsel), for respondent.

OPINION OF THE COURT

BOYERS, J.

On December 29, 1980, a fire occurred in the two-story wood frame house owned by plaintiffs Robert and Mary Krupp, husband and wife, as tenants by the entirety, causing substantial damage. At the time of the loss, the dwelling and its contents were insured under a standard homeowners' insurance policy issued by defendant, the

Aetna Casualty and Surety Company (hereinafter Aetna). The policy provided, *inter alia,* for coverage for fire loss or damage to the insured premises in the sum of $70,000, the "named insured" being denominated as "Robert and Mary Krupp".

Aetna, as insurer, was notified of the loss, and in response to its demand, on June 4, 1981, Mary Krupp executed a "Sworn Statement in Proof of Loss" wherein she described the cause and origin of the loss as "Arson". Thereafter, pursuant to the terms of the Aetna homeowners' policy, both Mary and Robert Krupp were examined under oath by Aetna's representative. During the examination, conducted August 6, 1981, Robert Krupp, upon the advice of counsel, declined to answer various questions propounded by Aetna's attorney. Mary Krupp's testimony was sparse, being limited in the main to augmenting her husband's testimony that he, his wife and two of their children commenced an automobile trip to Chicago on December 23, 1980 and did not return until after the conflagration. In response to an inquiry as to the basis for her determination that the fire was caused by arson, Mary Krupp explained that a sign in front of the house had stated "Under Arson Investigation". She was never interviewed by the arson squad, and denied any knowledge as to who started the fire. The proof of loss sworn to by Mary Krupp delineated three outstanding encumbrances on the premises which were acknowledged by Robert Krupp at the examination under oath to represent a mortgage of the property in 1973 at the time the house was purchased and security for two separate subsequent home improvement loans. Robert Krupp complied with his attorney's direction that he not respond to questioning about repayments on the loans secured by mortgages on the house. Mary Krupp denied knowledge of whether repayments on the three secured loans were current on the date of the fire, explaining that her husband paid all the bills. The transcript of the examination under oath of both Robert and Mary Krupp, including a recitation of appearances, amounted to some 27 pages. It is also worthy of note that the transcript of Mary Krupp's examination under oath is neither signed by her as examinee nor notarized.

Aetna declined to make any payment on the policy, and, on December 7, 1981, Mary Krupp commenced this action against Aetna to recover proceeds under the homeowners' policy. At the examination under oath prior to commencement of this action, Robert Krupp stated that he was not making a claim under the policy; however, by stipulation entered into after commencement of the action, and prior to joinder of issue, the caption was amended to make Robert Krupp a party plaintiff.

Demanded in the complaint are insurance proceeds in the sum of $108,885, consequential damages, "treble and punitive damages" in the amount of $326,655, and attorneys' fees of $15,000, together with interest, costs and disbursements.

By its answer, served July 21, 1982, Aetna asserted arson as a first affirmative defense. More specifically, it was alleged that: "the fire on the insured premises was wilfully and maliciously set or caused to be set by the plaintiffs, or with their privity, knowledge or consent, and with the intent to defraud and deceive * * * defendant". As a second affirmative defense, Aetna alleged that plaintiffs could not maintain their action because, pursuant to the terms and conditions of the insurance policy, it demanded that plaintiffs appear for examination under oath and upon their appearing, "plaintiffs wilfully refused to answer certain material and relevant questions". By way of two counterclaims, Aetna sought to recover $4,500 advanced on the policy, and asserted that in the event Aetna was required to make payment to Mary Krupp, it should have "judgment over against * * * Robert Krupp * * * by reason of the wrongful acts alleged in the first affirmative defense".

On January 7, 1983, nearly six months after joinder of issue, Robert Krupp, who had been charged with arson in the third degree (see Penal Law, § 150.10) based upon the December, 1980 fire damage to his home, pleaded guilty to the class A misdemeanor of attempted arson in the fourth degree (see Penal Law, §§ 110.00, 150.05). The Assistant District Attorney described Robert Krupp's activities: Robert Krupp secured several gasoline cans, filled them with gasoline, left them in the basement of his home and pro-

vided another individual with the keys to his home. He then left the jurisdiction and the house was burned by the individual with whom the keys were left, the motive being to collect insurance proceeds.

By motion returnable February 22, 1983, Aetna sought a preclusion order based upon plaintiffs' failure to furnish a bill of particulars in response to Aetna's demand. That motion was subsequently withdrawn based upon service of a responsive bill; however, in the meantime, Mary Krupp cross-moved, *inter alia,* for partial summary judgment in her favor.

In support, counsel for Mary Krupp submitted his own affidavit, together with the recently served bill of particulars, the homeowners' policy sued upon, the statement in proof of loss sworn to by Mary Krupp, and an estimate of the fire damage sustained and repair costs totaling $79,555. Assuming, *arguendo,* that Robert Krupp was in some manner responsible, counsel urged, since Mary Krupp was sans culpability for the fire and its effects, she was entitled to recover her portion of the insurance policy proceeds. As foundation for the proposition that Mary Krupp was not involved in any wrongful act, her attorney asserted that there was not a "scintilla of evidence, nor even a claim, that * * * Mary Krupp, was in any way culpable or involved directly or indirectly in the fire which occurred and the resulting damages", that no criminal charges had been laid against her after an extremely thorough and complete investigation by the arson squad, and his (the attorney's) own investigation indicated no willful or malicious conduct on her part.

In opposition to Mary Krupp's cross motion, Aetna submitted the affirmation of counsel, a certified Suffolk County Police Department "Offense Report" indicating that the fire was of a deliberate nature, the use of an accelerant being evident, a copy of the transcript of the proceeding at which Robert Krupp pleaded guilty to attempted arson in the fourth degree, and a copy of the transcript of the examinations of Robert and Mary Krupp under oath.

By his affirmation in opposition, counsel for Aetna contended that it was hard to believe that Mary Krupp was

unaware of the plaintiffs' financial condition or that she "did not observe her spouse obtaining and placing four five gallon gasoline cans" in the marital home prior to the couple's departure for Chicago. While it was possible that Mrs. Krupp was a victim of naivetè, counsel noted the question was one of credibility, and, accordingly, should be resolved by the trier of fact rather than by way of a motion for summary judgment. Counsel further asserted that the papers in support were insufficient inasmuch as the cross motion was predicated upon an attorney's affidavit rather than upon the affidavit of an individual with knowledge of the facts.

By way of reply affirmation, counsel for Mary Krupp argued that the testimony of Robert and Mary Krupp at their examinations under oath clearly established that Mrs. Krupp did not and could not have been possessed of "any knowledge of her husband's intentions and plans in connection with the fire"; further, Mary Krupp had not been charged with any criminal offense, and if the appropriate law enforcement authorities had failed to " 'point a finger' " at her, how could Aetna expect to do so?

Special Term granted Mary Krupp's cross motion for partial summary judgment on the issue of liability, stating, *inter alia:* "Mary Krupp seeks partial summary judgment on her cause of action for monies due her as a co-insured under a fire insurance policy issued by defendant on her home which she owned as a tenant by the entirety with plaintiff, Robert Krupp. Defendant alleges that Mary Krupp may have participated in her husband's activities which may have contributed or caused the fire in their home. Defendant has submitted proof that plaintiff, Robert Krupp, pleaded guilty to attempted arson in the fourth degree for his part in setting fire to their home but has not submitted any proof beyond mere allegations that Mary Krupp was involved. The misconduct of one co-insured may not be imputed to the other so as to prevent the innocent insured from collecting under the policy. *Winter v. Aetna Casualty & Surety,* 96 Misc. 2d 497. Mere allegations are insufficient to defeat a motion for summary judgment. Defendant must submit proof. Although the movant has failed to submit an affidavit as to the facts underlying this

action, she has submitted a copy of a deposition in which she denied having any knowledge as to who set fire to the house and other sufficient proof to allow the Court to grant partial summary judgment on the issue of liability".

We disagree, concluding that under the particular circumstances of this case, Mary Krupp, as moving party, failed to meet her burden of setting forth evidentiary facts sufficient to establish her entitlement to partial summary judgment (see *Coley v Michelin Tire Corp.,* 99 AD2d 795, 795-796).

Initially, we must decide whether, assuming, *arguendo,* that Mary Krupp is without involvement in her husband's admittedly illegal acts, such acts suffice to preclude the innocent coinsured wife's right to recover under the homeowners' policy. In such context, it is relevant to note that should Aetna pay out on the policy for damages to the insured building, Aetna would then become subrogated to the policyholder's right to collect for these same damages as against a third-party wrongdoer (see *New York Prop. Ins. Underwriting Assn. v Marno Realty Corp.,* 87 AD2d 814).

An examination of the relevant cases in this and other jurisdictions reveals two major approaches to the issue of whether an innocent coinsured may recover under a contract of insurance covering property which has sustained a loss because of the willful act of the other insured (see, generally, Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured, Ann., 11 ALR4th 1228; 43 Am Jur 2d, Insurance, § 493; and discussion in *St. Paul Fire & Mar. Ins. Co. v Molloy,* 291 Md 139, 147-149). The older, and more traditional analysis focuses on the interests and obligations arising from the nature of the ownership of the insured property (see, e.g., *Short v Oklahoma Farmers Union Ins. Co.,* 619 P2d 588 [Okla]; *Cooperative Fire Ins. Assn. v Domina,* 137 Vt 3, 5; *Fuselier v United States Fid. & Guar. Co.,* 301 So 2d 681, 682 [La]). Pursuant to this view, "[w]here * * * property is jointly owned, or there is a joint obligation on the part of the owners to save and preserve * * * property, an innocent owner cannot recover on the [insurance] policy where a coöwner willfully set the prop-

erty on fire" (45 CJS, Insurance, § 822, p 871); it was a rule applied with "special vigor where the insureds were husband and wife" (*American Economy Ins. Co. v Liggett,* __ Ind App __, __, 426 NE2d 136, 138). While this once constituted the majority rule, the number of jurisdictions which follow such an approach is declining (see *Ryan v MFA Mut. Ins. Co.,* 610 SW2d 428, 437 [Tenn]; *Richards v Hanover Ins. Co.,* 250 Ga 613, 614).

The more modern "dominant" rule focuses on the contract of insurance rather than the property rights of the parties thereto (see, e.g., *Ryan v MFA Mut. Ins. Co.,* 610 SW2d 428, 434-437, *supra; Hedtcke v Sentry Ins. Co.,* 109 Wis 2d 461, 484-487; *American Economy Ins. Co. v Liggett, supra,* pp 145-148 [Staton, J., concurring]). Pursuant to this modern rule, the courts have generally looked to the language of the insurance policy and used traditional rules of contract construction to determine whether the rights of the insureds are joint or severable (*Hedtcke v Sentry Ins. Co.,* 109 Wis 2d 461, 486-487, *supra*), for example, construing the policy in the manner it would be comprehended by the reasonable man and interpreting ambiguous language in the contract most strongly against its insurer-author (see *Steigler v Insurance Co. of North Amer.,* 384 A2d 398 [Del]; *St. Paul Fire & Mar. Ins. Co. v Molloy,* 291 Md 139, *supra*). Thus, given the reasonableness of the expectation of an insured that his individual interest would be covered by a policy naming him as insured without qualification, a homeowners' policy which nowhere specified whether the interests of a named insured husband and wife in property held by both as tenants by the entirety were joint or several, would be construed as covering the interests of each separately, and alleged arson by the husband would not defeat the wife's right to recover on her interest, namely, one half of the total damages (*St. Paul Fire & Mar. Ins. Co. v Molloy, supra*).

A third, and perhaps less traditional approach, has been the incorporation of equitable and policy principles of fundamental fairness to formulate a rule permitting recovery by an innocent coinsured regardless of the joint or severable nature of the interest in the insured property (Ann., 11 ALR4th 1228, 1232). The significant factor, the

Appellate Division of the Superior Court of our sister State, New Jersey, has held, is that responsibility or liability for the fraud was several and separate rather than joint (*Howell v Ohio Cas. Ins. Co.*, 130 NJ Super 350). In *Howell*, a surviving wife, who owned a house covered by a fire policy with her husband as tenants by the entirety, instituted an action to recover on the policy after her spouse set fire to the building and took his own life during the conflagration. Cross motions for summary judgment were made and the trial court awarded the wife judgment for one half of the damages occasioned by the fire within the limits of the policy, holding that, even if the realty was jointly owned, the contract rights under the fire policy were not in the same category, but rather constituted "personal property able to be possessed separately and individually by both spouses" (*Howell v Ohio Cas. Ins. Co.*, 124 NJ Super 414, 419, *supra*). In affirming so much of the court's decision as upheld the wife's right to recover, the Appellate Division found the wife entitled to recover irrespective of whether her interest was deemed joint or several, writing: "We hold that the trial court correctly determined that the fraud of the husband was no bar to recovery under the policy by the innocent wife. However, we reach this result irrespective of whether the interests of the wife and husband in the tenancy by the entirety, in the personal property, or in the contract rights under the policy are deemed to be joint or several. The significant factor is that the responsibility or liability for the fraud — here, the arson — is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein. Accordingly, the fraud of the co-insured husband does not void the policy as to plaintiff wife" (*Howell v Ohio Cas. Ins. Co.*, 130 NJ Super 350, 354, *supra*).

Although it did not deem it to be controlling, the *Howell* court did observe that its conclusion was supported by the provisions of the policy prepared by the defendant carrier, namely, ambiguity in the designation of the named insured as the husband "and/or" plaintiff wife and the reasonable expectations of the insureds.

In our own State, Justice Niehoff, presently of this court, adopted the approach in *Howell,* finding it to be sound and

conducive to an equitable result (*Winter v Aetna Cas. & Sur. Co.,* 96 Misc 2d 497). After trial on the issue of liability, the court "sustained the indemnification claim of a wife, the coinsured co-owner as tenant by the entirety of the insured home, for fire damage caused by her husband's misconduct, which did foreclose *his* recovery under the policy" (Sands & Lamel, Insurance Law, 31 Syracuse L Rev 323, 343). More specifically, at a time when the parties to the fire policy were experiencing substantial marital discord, the husband significantly increased the hazard of fire by spilling several gallons of gasoline throughout the house (*Winter v Aetna Cas. & Sur. Co., supra,* pp 498-499), albeit Trial Term found, on the evidence adduced, that he did not set the fire. No proof was offered and no claim was made at trial that plaintiff wife increased the hazard by any means within her control or knowledge; the responsibility was solely that of the husband (*Winter v Aetna Cas. & Sur. Co., supra,* p 501). In finding the innocent coinsured wife to be entitled to recover on the fire policy to the extent of a one-half interest (citing *Hawthorne v Hawthorne,* 13 NY2d 82), Trial Term rejected those analyses dependent upon the nature of the insureds' interests in the property involved or a perusal of the policy, but rather focused on the separate character of responsibility for the husband's wrongful conduct which, it held, could not be ascribed to a wife innocent of such acts.

Turning to the case at bar, we are persuaded that, given the absence of explicit language in the homeowners' policy excluding coverage and precluding recovery, an innocent coinsured spouse cannot be foreclosed from recovery where insured property held as tenants by the entirety is damaged as a result of the incendiary acts of the other spouse; absent contrary unambiguous provisions, the policy must be construed as covering the interests of each spouse separately, a construction consistent with the reasonable expectations of a policyholder in the shoes of an innocent named insured. Clearly, "[t]he ordinary person owning an undivided interest in property, not versed in the nice distinctions of insurance law, would naturally suppose that his individual interest in the property was covered by a policy which named him without qualification as one of the

persons insured" (*Hoyt v New Hampshire Fire Ins. Co.,* 92 NH 242, 244; accord *St. Paul Fire & Mar. Ins. Co. v Molloy,* 291 Md 139, 152-153, *supra; Steigler v Insurance Co. of North Amer.,* 384 A2d 398, *supra*). Additionally, we recognize, as have the courts in the *Winter* and *Howell* cases, that considerations of public policy, equity and fundamental justice require that, absent specific language in the insurance contract to the contrary and regardless of how the interest in the insured property is characterized, the independent wrongful fraudulent conduct of one spouse cannot serve to bar recovery under the policy by an innocent coinsured spouse (*Winter v Aetna Cas. & Sur. Co.,* 96 Misc 2d 497, *supra; Howell v Ohio Cas. Ins. Co.,* 130 NJ Super 350, *supra*). While there may exist additional policy considerations with respect to the wrongdoer's indirect benefit from a recovery by an innocent spouse in cases wherein the guilty spouse and the innocent spouse remain married, on balance, the equities favor the innocent spouse (see *Commercial Union Ins. Co. v State Farm Fire & Cas. Co.,* 546 F Supp 543, 547).

Turning to the propriety of Special Term's award of partial summary judgment to movant Mary Krupp, we are persuaded that in view of the particular facts and circumstances of the case and the record presently before us, and given the relative infancy of the litigation, such a remedy is presently inappropriate.

Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a material and triable issue of fact (*Coley v Michelin Tire Corp.,* 99 AD2d 795, *supra;* see *Rotuba Extruders v Ceppos,* 46 NY2d 223, 231; *Phillips v Kantor & Co.,* 31 NY2d 307, 311); issue-finding, as opposed to issue-determination constitutes the key to the procedure (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404). Summarizing those principles applicable to motions for summary judgment, this State's Court of Appeals has written: "To obtain summary judgment it is necessary that the movant establish his cause of action or defense 'sufficiently to warrant the court as a matter of law in directing judgment' in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form. On the other hand, to

defeat a motion for summary judgment the opposing party must 'show facts sufficient to require a trial of any issue of fact' (CPLR 3212, subd [b]). Normally if the opponent is to succeed in defeating a summary judgment motion he, too, must make his showing by producing evidentiary proof in admissible form. The rule with respect to defeating a motion for summary judgment, however, is more flexible, for the opposing party, as contrasted with the movant, may be permitted to demonstrate acceptable excuse for his failure to meet the strict requirement of tender in admissible form (e.g., *Phillips v Kantor & Co.,* 31 NY2d 307; *Indig v Finkelstein,* 23 NY2d 728; also CPLR 3212, subd [f])". (*Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067-1068.)

While the acceptability of the excuse proffered is dependent upon the circumstances of the particular case (*Friends of Animals v Associated Fur Mfrs., supra*), "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York,* 49 NY2d 557, 562). In reaching a decision, the court may not ordinarily weigh the credibility of the affiants unless untruths are clearly apparent (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.12; *Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439, 441). However, the credibility of persons possessed of exclusive knowledge of the facts should not be determined by affidavits (see *Koen v Carl Co.,* 70 AD2d 695), and where knowledge is a key fact at issue, and peculiarly within the possession of the movant himself, summary judgment will ordinarily be denied (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3212:19, pp 438-439).

Applying these principles to the case before us, it must be concluded that Mary Krupp, as movant, failed to sustain her greater burden of setting forth evidentiary facts to establish her cause sufficiently to entitle her to judgment as a matter of law (cf. *Coley v Michelin Tire Corp.,* 99 AD2d 795, *supra*). Whereas the affirmation or affidavit of counsel, even if he is without personal knowledge of the facts, may serve as a vehicle for the submission of documentary exhibits providing " 'evidentiary proof in admissible form' " (*Zuckerman v City of New York,* 49 NY2d 557, 563, *supra*),

the transcript of the preaction examination under oath taken by the insurer (submitted not by movant in support but by counsel for Aetna in opposition), and relied upon by movant, was unacceptable in that it was neither signed nor verified (see *Horowitz v Kevah Konner, Inc.,* 67 AD2d 38; *Hayduk v Mahoney Motor Sales,* 18 AD2d 703; cf. *Pathmark Graphics v J. M. Fields, Inc.,* 53 AD2d 531, mot to dismiss app granted 40 NY2d 1093; *Executive Securities Corp. v Gray,* 67 AD2d 860).

The instant case is distinguishable from *Winter (supra)* wherein the issue of liability was determined following a plenary trial on the issue of liability, no claim being made that the wife, who had been experiencing substantial marital discord at the time of the fire, had increased the hazard by any means within her control or knowledge. Here, the record is bereft of any indication that relations between the coinsureds were any less than cordial. While the proof of loss sworn to by Mary Krupp delineated three outstanding encumbrances on the subject premises, upon examination under oath she denied any knowledge of the current status of repayment of the secured loans. Further, while, upon her examination under oath, movant summarily denied any knowledge as to who set the fire, there is no affidavit executed by her in support of the instant cross motion or by way of reply to explain her lack of knowledge of the four five-gallon gasoline drums found in the marital home after the fire and placed in that establishment prior to her departure for Chicago, or the discrepancy in her statements respecting family finances. Further, even assuming, *arguendo,* that the transcript of the terse examination under oath was properly considered by the court, the record before us evidences a material issue of fact, dependent for its resolution upon a weighing of movant's credibility, and one which is peculiarly within movant's knowledge, namely, whether fraudulent acts of complicity on her part contributed to the fire.

Accordingly, we conclude that a material issue of fact presently exists sufficient to defeat the cross motion for partial summary judgment; any other result, given the particular facts of this case, the nature of the action, its

relative infancy, and the paucity of movant's supporting papers, would be palpably unfair.

MOLLEN, P. J., MANGANO and THOMPSON, JJ., concur.

Order of the Supreme Court, Suffolk County, dated April 22, 1983, reversed, on the law, with costs, and plaintiff Mary Krupp's cross motion for partial summary judgment in her favor on the issue of liability denied.