REPUBLIC INSURANCE
COMPANY, Petitioner,

v.

Robert H. JERNIGAN and Gayle S.
Jernigan, Respondents.

No. 86SC13.

Supreme Court of Colorado,
En Banc.

April 11, 1988.

Henderson and Streelman, Jack D. Henderson, Denver, for petitioner.

Allen, Rogers, Metcalf & Vahrenwald, Donald E. Johnson, Jr., Fort Collins, for respondents.

ERICKSON, Justice.

The petitioner, Republic Insurance Company (Republic), brought a declaratory judgment action against Robert H. Jernigan and Gayle S. Jernigan, pursuant to C.R.C.P. 57 and section 13–51–101, 6 C.R.S. (1982), claiming that they had breached the terms and conditions of their homeowners insurance policy. The declaratory judgment action, based upon a claim of arson, asserted that the insurance policy was void and that the Jernigans' fire insurance coverage for the dwelling, personal property, and additional living expenses should be denied. The trial court found that the policy between Republic and Robert H. Jernigan did not cover the loss arising out of fire and smoke damage to the dwelling on April 26, 1982. The court, however, determined that there was coverage under the policy between Republic and Gayle S. Jernigan. The court of appeals affirmed the

district court's judgment with the exception of the damage award, and remanded the case for amendment of the judgment to reduce the amount of damages awarded to Gayle S. Jernigan. We granted certiorari on three issues: (1) Whether there was sufficient evidence to support the trial court's finding that Gayle S. Jernigan did not intentionally misrepresent the costs of repairs to the dwelling; (2) whether Gayle S. Jernigan is entitled to insurance coverage after the court found that her husband, Robert H. Jernigan, intentionally set the fire that destroyed the insured property; and (3) whether, if Gayle S. Jernigan is entitled to coverage, she is limited to one-half of her damages within policy limits. We affirm and return the case to the court of appeals with directions to remand to the district court for further proceedings consistent with this opinion.

### I.

On February 11, 1982, Republic issued a homeowners insurance policy to Gayle S. Jernigan and Robert H. Jernigan for their home in Fort Collins. The Jernigans' home sustained substantial smoke and fire damage on April 26, 1982, while the insurance policy was in full force and effect. On June 1, 1982, pursuant to the terms of the policy, Republic requested that the Jernigans submit a signed, sworn statement of loss. Later that month, Republic rejected the Jernigans' sworn statement and proof of loss and sought more specific information on the proof of loss statement. Republic also required the Jernigans, under the terms of the policy, to submit to an examination under oath. The Jernigans submitted to the examination and provided a second sworn statement of loss. Republic denied coverage, claiming that they had breached the terms and conditions of the homeowners insurance policy when Robert H. Jernigan intentionally set fire to the insured home,[1] and that the Jernigans in-

tentionally concealed or misrepresented the extent and value of loss to their dwelling and personal property. The trial court found that Robert H. Jernigan intentionally set fire to the dwelling, but that Gayle S. Jernigan made no intentional, purposeful, or fraudulent misrepresentations as to the cost of repairing the dwelling. The trial court also found Gayle S. Jernigan to be a separate insured who was entitled to coverage under the terms of the insurance policy.

The court of appeals in *Republic Ins. Co. v. Jernigan,* 719 P.2d 331 (Colo.App.1985), concluded that the trial court's findings that Gayle S. Jernigan did not intentionally misrepresent the costs of repairs to her home and the value of her personal property were not clearly erroneous and were supported by the record. The court also agreed with the trial court's conclusion that under the terms of the homeowners insurance policy, the rights and obligations of the Jernigans were several, and Mrs. Jernigan was entitled to recover. The court of appeals held that Mrs. Jernigan should recover one-half the amount of damages sustained to the dwelling, other structures, and personal property, not to exceed the total policy limits.[2]

### II.

Republic asserts that there was insufficient evidence to support the trial court's finding that Gayle S. Jernigan did not intentionally misrepresent the costs of repairs to the dwelling. We disagree. The insurance policy entered into between the parties states in relevant part:

> *Concealment or Fraud.* We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

---

**1.** It is conceded that Gayle S. Jernigan had no knowledge of her husband's plans to burn down the house. She is therefore considered to be an innocent spouse or an innocent insured.

**2.** On appeal, Republic does not claim that the Jernigans intentionally misrepresented the val-

ue of their personal property. Section II of our opinion therefore relates only to the costs of repairs to the Jernigans' dwelling. We note, however, that our holding in section IV applies to all damages.

Republic claims that Gayle S. Jernigan, through her agent, Public Adjusters, Inc., misrepresented the loss to her dwelling, by claiming the cost of repairs to be $132,-824.00, and breached the concealment or fraud provision rendering the contract void.

In October, 1982, Robert H. Jernigan made a sworn statement in the presence of his wife stating that the $110,000 proof of loss which he initially submitted to Republic was too high and would be amended to a lesser amount. The Jernigans later received an estimate from Kem Homes to build the entire structure for $79,650. A second estimate was submitted by Thomas D. Sharp of Insurance Contractors, Inc., in the amount of $67,883.46. At trial, Sharp testified that the estimate submitted by Public Adjusters was "inflated." A claims manager of Republic estimated the cost of repairs to the damaged or destroyed portion of the house at $66,086.28.

Ralph Symalla, president of Public Adjusters, testified that his estimate was high, that some of the items in the estimate were questionable, and that some contractors could do the work for a lower price. The trial court found that "[t]here was no misrepresentation in regard to the cost of repairs to the dwelling that was intentional, purposeful, or fraudulent."

The record indicates that Public Adjusters included several items in its estimate which were not included in the estimates of the other contractors. Public Adjusters also charged higher prices for many of the items which were included in the estimates of other contractors. The differences between the costs of Public Adjusters' estimate and the estimates of the other contractors may fairly be attributed to differences in the scope of work and the grade of materials included within the respective estimates. Since the record does not disclose that Gayle S. Jernigan, through her agent, Public Adjusters, intentionally, purposefully, or fraudulently misrepresented the cost of repairs to her dwelling, we will not disturb the factual findings of the trial court on appeal.[3] *See Martin v. People,* 738 P.2d 789 (Colo.1987); *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986); *Gebhardt v. Gebhardt,* 198 Colo. 28, 595 P.2d 1048 (1979).

### III.

Republic also contends that Gayle S. Jernigan is not entitled to insurance coverage because the court found that her husband intentionally set the fire that destroyed the insured property. According to Republic, since the Jernigans are named as joint insureds they have a joint responsibility to abide by the policy's conditions. The validity of this argument rests upon the assumption that the Jernigans are joint, as opposed to several, insureds. While some courts have emphasized that the joint obligations of the insureds arise from the nature of the underlying property ownership, and have denied recovery to the innocent insured where the dwelling is jointly owned,[4] courts that have adopted the mod-

---

**3.** In one of his orders denying the parties' post-trial motions, the trial judge elaborated on his findings of fact relating to the alleged misrepresentations or fraudulent representations of the Jernigans:

[Republic's] counsel continues to maintain that neither Defendant should be afforded coverage due to alleged misrepresentations or fraudulent representations as to the extent of their loss. The Court made specific findings on this matter finding no such misrepresentation or fraudulent conduct on the part of the [Jernigans]. [Republic's] evidence not only did not establish such conduct on the part of the [Jernigans] but clearly established the opposite. The [Jernigans] only listed property which was within the residence; obtained assistance from others to ascertain value or degree of loss; and made a full disclosure to

said third parties and [Republic's] representatives as to the basis of their claim. The fact that subsequent to the loss they may have sold some additional property does not make the original claim a fraudulent claim but only a fact to be taken into consideration in adjusting the loss. The fact that the loss may have been put in at somewhat inflated figures was, in many respects, due to the uncertainty as to the degree of loss as to how the value was going to be determined by [Republic]. If confusion did exist as to how value was going to be determined, this was caused by [Republic's] representatives and the written forms given to [the Jernigans] by [Republic].

**4.** *See, e.g., Short v. Oklahoma Farmers Union Ins. Co.,* 619 P.2d 588 (Okla.1980); *Cooperative Fire Ins. Assoc. of Vermont v. Domina,* 137 Vt. 3,

ern rule focus on the insurance contract to determine whether the rights of the insureds are joint or several.[5]

A fire insurance policy is generally viewed as a contract "indemnifying the insured party for loss to his insurable interest and not as providing proceeds on the property itself." Note, *Spouse's Fraud as a Bar to Insurance Recovery*, 21 Wm. & Mary L.Rev. 543, 547 (1979); *see also* 5 J. Appleman & J. Appleman, *Insurance Law and Practice* § 3082, at 293 (1970 & 1987 Supp.). "An insurance policy is a contract and the same rules of construction applicable to other contracts are applicable to insurance policies." *Commercial Union Ins. Co. v. State Farm Fire & Casualty*, 546 F.Supp. 543 (D.Colo.1982); *see Marez v. Dairyland Ins. Co.*, 638 P.2d 286 (Colo. 1981). We must therefore look to the language of the insurance policy to determine whether the rights of the Jernigans are joint or several.

■■■ Where an insurance policy is unambiguous a court should not rewrite it to arrive at a strained construction. *Urtado v. Allstate Ins. Co.*, 187 Colo. 24, 528 P.2d 222 (1974). However, where there is ambiguity or uncertainty as to coverage, courts should construe the policy in favor of the insured. *Coxen v. Western Empire Life Ins. Co.*, 168 Colo. 444, 452 P.2d 16 (1969); *see United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490 (10th Cir.1976). We agree with the trial court's finding that under the definition of insured

in the policy Gayle S. Jernigan is a separate and distinct person. Robert H. Jernigan and Gayle S. Jernigan are listed as the "named insured." The definition section of the insurance policy states: "'insured' means you and the following residents of your household: a. your relatives; b. any other person under the age of 21 who is in the care of the person named above." In determining whether the obligations of the insureds are joint or several, we are guided by section II, entitled *Conditions*. Paragraph two states: "*Severability of insurance.* This insurance applies separately to each *insured*. This condition shall not increase our limit of liability for any one occurrence." Several, of course, means "[s]eparate; individual; independent; severable. In this sense the word is distinguished from 'joint.'" *Black's Law Dictionary* 1232 (5th ed. 1979). We conclude that under the terms of this homeowners insurance policy the rights and obligations of Gayle S. Jernigan and Robert H. Jernigan are several and not joint.

■■ Republic relies on several cases in asserting that an innocent co-insured may not recover under a homeowners insurance policy after another co-insured has intentionally set fire to the insured property. In each of those cases, however, the courts determined that the property interests of the co-insureds were joint and non-separable.[6] Where a court, however, examines the insurance policy and finds that the in-

399 A.2d 502 (1979). Other cases deny recovery because the wrongdoing of one spouse is imputed on the other, *see, e.g., Rockingham Mut. Ins. Co. v. Hummel*, 219 Va. 803, 250 S.E.2d 774 (1979), or because a spouse cannot profit from the other spouse's wrongdoing, *see, e.g., Fuselier v. United States Fidelity & Guaranty Co.*, 301 So.2d 681 (La.App.1974).

5. *See, e.g., Hosey v. Seibels Bruce Group, South Carolina Ins. Co.*, 363 So.2d 751 (Ala.1978); *Steigler v. Insurance Co. of North America*, 384 A.2d 398 (Del.1978); *Auto Owners Ins. Co. v. Eddinger*, 366 So.2d 123 (Fla.Dist.Ct.App.1979); *Economy Fire & Casualty Co. v. Warren*, 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979); *Hildebrand v. Holyoke Mut. Fire Ins. Co.*, 386 A.2d 329 (Me.1978); *St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981); *Morgan v. Cincinnati Ins. Co.*, 411 Mich.

267, 307 N.W.2d 53 (1981); *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N.H. 242, 29 A.2d 121 (1942); *Delph v. Potomac Ins. Co.*, 95 N.M. 257, 620 P.2d 1282 (1980); *Winter v. Aetna Casualty & Surety Co.*, 96 Misc.2d 497, 409 N.Y.S.2d 85 (1978); *Lovell v. Rowan Mut. Fire Ins. Co.*, 302 N.C. 150, 274 S.E.2d 170 (1981); *Ryan v. MFA Mut. Ins. Co.*, 610 S.W.2d 428 (Tenn.App.1980); *Hedtcke v. Century Ins. Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982).

6. *See supra,* note 4; *see also Mele v. All–Star Ins. Corp.*, 453 F.Supp. 1338 (E.D.Pa.1978); *Federal Ins. Co. v. Wong*, 137 F.Supp. 232 (S.D.Cal.1956); *Kosior v. Continental Ins. Co.*, 299 Mass. 601, 13 N.E.2d 423 (1938); *Jones v. Fidelity and Guaranty Ins. Corp.*, 250 S.W.2d 281 (Tex.Civ.App.1952); *Bellman v. Home Ins. Co.*, 178 Wis. 349, 189 N.W. 1028 (1922), *overruled by Hedtcke,* 109 Wis.2d 461, 326 N.W.2d 727.

terests of the co-insureds are several, an innocent co-insured is generally not precluded from recovery on a fire insurance policy when a co-insured intentionally destroys the covered property.[7] *See* Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned By Another Insured,* 11 A.L.R.4th 1228 (1982 & 1987 Supp.).

Republic also argues that public policy prohibits a wrongdoer from benefiting from his wrongful acts. Because the Jernigans still live together Republic claims Mr. Jernigan would profit from any award to Mrs. Jernigan. This issue was addressed in *Commercial Union Ins. Co. v. State Farm Fire & Casualty,* 546 F.Supp. 543 (D.Colo.1982), a case involving facts that are strikingly similar to those in this case. There, the court stated that the sole issue was "whether Julian Oxford's act of arson voids coverage as to both himself and Charlotte Oxford." *Id.* at 544. The court interpreted the insurance contract as providing rights and obligations between the insureds which were several and not joint. The two lines of authority surveyed above were examined, and the court opted to follow the modern rule. Judge Weinshienk then addressed the issue of whether allowing the innocent spouse and children to recover would bestow an indirect benefit upon the arsonist husband, who remained married to the innocent spouse. She noted that the innocent spouse and children had lost property from an unforeseeable event that they could not have prevented. In finding that there was no profit to the guilty spouse, Judge Weinshienk stated: "Here the only benefit to the arsonist is an indirect one whereby his spouse and children recover what the spouse and children had already owned and insured. The wrongdoer has no gain, advantage or recovery of what he had

owned prior to the fire." *Id.* at 547. The court concluded that the equities favored allowing the innocent spouse and children to recover.

The Wisconsin Supreme Court, in providing coverage to an innocent co-insured, also addressed the issue:

> Courts adopting the modern rule recognize the need to deter arsonists, but also recognize the fundamental principle of individual responsibility for wrongdoing. A legal principle denying coverage to an innocent party implicitly imputes the guilt of the arsonist to the innocent insured.

*Hedtcke v. Sentry Ins. Co.,* 109 Wis.2d 461, 488, 326 N.W.2d 727, 740 (1982). *See also Maravich v. Aetna Life and Casualty Co.,* 350 Pa.Super. 392, 504 A.2d 896 (1986) ("There is no public policy consideration ... which prevents the innocent spouse from recovering the indemnity which [the insurer] had agreed to pay for the loss which she sustained.").

In balancing the equities under the facts of this case, payment to the innocent co-insured for her own benefit and that of her two children outweighs any indirect benefit to Mr. Jernigan. The modern and majority rule, which we have elected to follow, provides coverage under the contract to Mrs. Jernigan for a portion of the property damaged.

## IV.

Having concluded that Gayle S. Jernigan is entitled to recover a part of the insurance money, we must determine what portion of the proceeds she is entitled to. The trial court determined that "Gayle S. Jernigan is entitled to separate benefits as set forth in *Commercial Union Ins. Co. v. State Farm Fire & Casualty Co.,* 546

---

7. *See supra,* note 5; *see also Commercial Union Ins. Co. v. State Farm Fire and Casualty Ins. Co.,* 546 F.Supp. 543 (D.Colo.1982); *Opat v. State Farm Fire and Casualty Ins. Co.,* 542 F.Supp. 1321 (W.D.Pa.1982), *aff'd,* 755 F.2d 922 (3d Cir. 1984); *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 299 S.E.2d 561 (1983); *Fuston v. National Mut. Ins. Co.,* 440 N.E.2d 751 (Ind.App.1982); *American Economy Ins. Co. v. Liggett,* 426 N.E. 2d 136 (Ind.App.1981); *Millers Nat'l Ins. Co. v.* *Bunds,* 158 Kan. 662, 149 P.2d 350 (1944); *Samhammer v. Home Mut. Ins. Co.,* 120 A.D.2d 59, 507 N.Y.S.2d 499 (1986); *Krupp v. Aetna Life & Casualty Co.,* 103 A.D.2d 252, 479 N.Y.S.2d 992 (1984); *Lovell v. Rowan Mut. Fire Ins. Co.,* 302 N.C. 150, 274 S.E.2d 170 (1981); *Maravich v. Aetna Life and Casualty Co.,* 350 Pa.Super. 392, 504 A.2d 896 (1986); *McCracken v. Government Employees Ins. Co.,* 284 S.C. 66, 325 S.E.2d 62 (1985).

F.Supp. 543 (D.Colo.1982)," and ordered the parties to enter into an "appraisal as provided by the terms of the insurance contract to determine the amount of loss of Gayle S. Jernigan." The Jernigans objected to the sentence relating to the *Commercial Union* case, claiming that Gayle S. Jernigan, as a separate person insured under the policy, was entitled to complete compensation for her losses. In *Commercial Union,* the court concluded that the innocent spouse was entitled to receive the following: (1) the lesser of one-half the policy limits or one-half of the replacement cost of both the "residence premises" and the "named insureds" joint personal property; (2) the entire replacement cost of her own personal property and the personal property of her children; (3) additional living expenses for herself and her children; and (4) one-half of any proceeds due under the "additional coverages" provision of the policy. *Id.* at 547.

In ruling on the Jernigans' motion, the trial court stated that it cited *Commercial Union* to illustrate why Gayle S. Jernigan was entitled to coverage, not to limit coverage in the manner set forth by Judge Weinshienk. Republic then filed a motion to alter and amend, claiming, *inter alia,* that the court erred in concluding that it did "not intend to limit its determination that the defendant, Gayle S. Jernigan, was entitled to coverage solely to the cited Federal District Court case but used that case as an example to illustrate why she was entitled to coverage." The trial court denied Republic's motion, stating that the question of what specific coverage Gayle S. Jernigan was to receive was not an issue at trial.

On the issue of damages, the court of appeals concluded that "Mrs. Jernigan may recover up to one-half interest in the property, i.e., one-half of the value of the damaged dwelling, other structures, and personal property; limited of course by the total policy limits." The court of appeals interpretation of Gayle S. Jernigan's insurable interest was a primary issue on appeal

and is an issue of first impression in this state. The homeowners insurance policy includes the following provision in section I (CONDITIONS):

    1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the covered property, we shall not be liable:

      a. to the **insured** for an amount greater than the **insured's** interest; nor

      b. for more than the applicable limit of liability.

Gayle S. Jernigan concedes that her interest in the insured property, as a joint tenant, is one-half of the value of that property.[8] Clause (a), therefore, limits her recovery to one-half of the value of the property. Clause (b) further limits her recovery to the applicable limit of liability. The applicable limit of liability under this policy for a dwelling is $110,000.

In the absence of an ambiguity, an insurance contract must be given effect according to the ordinary and accepted sense of the terms contained therein. *In re Daigle's Estate,* 634 P.2d 71 (Colo.1981); *see also Martinez v. Hawkeye–Security Ins. Co.,* 195 Colo. 184, 576 P.2d 1017 (1978). Had Republic intended to limit an innocent spouse to one-half of the limits of the policy, it could have included a limiting provision in the insurance contract. Absent a showing that Robert H. Jernigan would be unjustly enriched, it is not the position of this court to alter the clear language of the policy. *See Fellman v. Fireman's Fund. Ins. Co.,* 735 F.2d 55, 60 (2d Cir.1984) (where innocent co-insured intends to receive and retain the full amount of the insurance proceeds, rather than convey the proceeds to the guilty party, she should recover for her insurable interest in the property); *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136, 144 (Ind.App.1981) (where co-insured perished in fire that he started, there is no reason to deny the

---

8. Although the value of the property was disputed, Gayle S. Jernigan's one-half share of the highest estimate ($132,824) would exceed one-half of the $110,000 policy limit. The amount of the damages was not decided by the trial court in the declaratory judgment action.

innocent insured a full recovery under the insurance policy).

While some courts have concluded that the innocent spouse is entitled to recover one-half of the damages, not to exceed one-half of the policy limits, *e.g.,* *Delph v. Potomac Ins. Co.,* 95 N.M. 257, 259, 620 P.2d 1282, 1284 (1980), other courts have awarded an innocent co-insured one-half of the damages up to the limits of the insurance policy, *see Steigler v. Insurance Co. of North America,* 384 A.2d 398, 402 (Del.1978); *St. Paul Fire and Marine Ins. Co. v. Molloy,* 291 Md. 139, 153, 433 A.2d 1135, 1142 (Md.1981); *Howell v. Ohio Casualty Ins. Co.,* 124 N.J.Super. 414, 418–419, 307 A.2d 142, 145 (1973). Interpreting the insurance policy in favor of the insured, we conclude that Gayle S. Jernigan is entitled to recover one-half the damages, not to exceed the limits of the policy. We thereby give effect to the insurance contract as indemnifying the insured, Gayle S. Jernigan, for the loss to her separate insurable interest up to the limits of that interest.

Accordingly, we affirm and return the case to the court of appeals with directions to remand to the district court for further proceedings consistent with this opinion.