OPINION OF THE COURT
Robert M. Berliner, J.
It is ordered that this motion is disposed of as follows:
This medical malpractice action arises from alleged negligence during a surgical procedure at Nyack Hospital on or about September 12, 1993. On this date, plaintiff received medical and surgical treatment at Nyack Hospital for, inter alia, a lacerated thoracic aorta stemming from a motor vehicle accident. Plaintiff claims that physicians at Nyack Hospital left a ureteral catheter/stent in his body following surgery and failed to properly monitor and treat him before and after this surgery. Plaintiff sustained various injuries and required multiple procedures and surgeries, including the placement and removal of other ureteral stents.
Plaintiff presented to Pioneers Memorial Hospital in January 2012 with complaints of pain in his right side flank and hematuria, blood in his urine. This series of complaints prompted a June 14, 2012 cystoscopy performed by Dr. Alan Walther, which revealed, according to his operative report, “two fragments of an older ureteral catheter exiting from the left meatus” measuring approximately 25 centimeters in aggregate length.[1]
Nyack Hospital seeks dismissal pursuant to CPLR 3211 (a) (5) as well as summary judgment dismissing the complaint pursuant to CPLR 3212. The court will first address Nyack Hospital’s dismissal application.
Motion to Dismiss
Nyack Hospital seeks dismissal on statute of limitations grounds, arguing that the instant action was not commenced within the governing 2½-year period following the September 12, 1993 surgery. In doing so, Nyack Hospital argues that the offending ureteral stent/catheter is a “fixation device” and therefore not a “foreign object” entitled to the tolling of the statute of limitations pursuant to CPLR 214-a. In opposition, plaintiff argues that the ureteral stent/catheter is a “foreign object” under CPLR 214-a and offers the recent Court of Appeals case of Walton v Strong Mem. Hosp. (25 NY3d 554 [2015]) in support of this position. In reply, Nyack Hospital argues *216 that the instant case is factually distinguishable from the Walton matter. The court will begin and end its analysis within the backdrop of this recent decision from the High Court.
The plaintiff in Walton claimed that defendants negligently left a foreign body in his heart, namely portions of a polyvinyl catheter, causing him to suffer a stroke, transient ischemic attacks and other maladies. The catheter had been placed within his left and right atrium as part of surgery to correct a congenital heart malformation when he was three years old and was discovered during exploratory surgery more than 22 years later. In passing upon the question of whether the catheter was a foreign object for purposes of the discovery rules of CPLR 214-a, the Court of Appeals chronicled the common-law authority and recognized several general principles from such cases. (Walton, 25 NY3d at 557.)
In applying these principles, the Court of Appeals observed that the polyvinyl catheter in question functioned like a sentinel and “a conduit for information from [the] cardiovascular system” and “performed no securing or supporting role during or after surgery.” (Walton, 25 NY3d at 572.) Therefore, they were not fixation devices that were categorically excluded from the foreign object exception in CPLR 214-a. Given this, the question became “whether the catheters are analogous to tangible items like the clamps in Flanagan or other surgical paraphernalia (e.g., scalpels, sponges, drains) likewise introduced into a patient’s body solely to carry out or facilitate a surgical procedure.” (Id. at 573.) The Court of Appeals answered this question in the affirmative, although it recognized factual differences between the “botched” catheter removal in Walton and the inadvertent leaving of surgical clamps in Flanagan.
Nyack Hospital’s urological expert, Joph Steckel, M.D., opines that a ureteral catheter/stent placed during plaintiff’s September 12, 1993 surgery would constitute a fixation device and not a foreign object.[2] Dr. Steckel states that a ureteral catheter/stent is placed and left inside of the body for up to six months in order to bypass an obstruction caused by strictures, stones or tumors.[3]
Plaintiff’s urological expert, Michael S. Brodherson, M.D., explains that ureteral stents are employed to serve two *217 purposes in connection with aortic dissection repair surgery such as plaintiffs 1993 procedure. Dr. Brodherson states that the stent in question was used as a surgical drain to aid in the draining of fluids from the kidney while the ureteral repair healed and did not serve a fixative purpose.[4]
The court finds that the ureteral catheter/stent performed no securing or supporting role during or after surgery and thus does not constitute a fixation device. Its primary purpose was to drain fluids and would have been introduced solely to facilitate a surgical procedure. Accordingly, the court deems the ureteral catheter/stent analogous to tangible items like the clamps in Flanagan, and a “foreign object” within the ambit of “other surgical paraphernalia” identified in Walton.
It is undisputed that plaintiff commenced the instant action within one year of discovering the ureteral catheter/stent during the June 14, 2012 cystoscopy. Based upon the foregoing, Nyack Hospital’s motion to dismiss pursuant to CPLR 3211 (a) (5) is denied.
Summary Judgment Motion
Nyack Hospital also seeks summary judgment dismissing plaintiff’s complaint pursuant to CPLR 3212. Nyack Hospital argues that plaintiff failed to establish a prima facie case as to its liability based upon its inability to establish the requisite nexus between the alleged malpractice and the resulting injuries. This assertion is based largely upon the fact that Nyack Hospital’s medical records pertaining to plaintiff’s 1993 surgery no longer exist, as it was only obligated to maintain such records for six years pursuant to Education Law § 6530 (32) and 8 NYCRR 29.2. Moreover, Nyack Hospital avers that plaintiff’s expert will be unable to establish that any alleged departure more probably than not caused the resulting injuries. Nyack Hospital offers the expert affirmation of Dr. Steckel, who opines that Nyack Hospital’s care rendered to plaintiff was appropriate and in accordance with good and accepted medical practice and was not the proximate cause of any of the injuries alleged in the bill of particulars.[5] Dr. Steckel states that it is “completely infeasible” for a ureteral stent/catheter to have been placed during plaintiff’s September 12, 1993 surgery based upon how the catheter was described in Dr. Walther’s operative report, the location of the scars, and the absence of *218 any evidence of the ureteral stent/catheter on a January 3, 2012 CT scan of plaintiff’s abdomen and pelvis. Dr. Steckel concludes that the only instance in which a ureteral stent/ catheter could have been placed in plaintiff was during one of three procedures he underwent in 2012.
In opposition, plaintiff offers the expert affirmation of its own urologist, Michael S. Brodherson, M.D., who reviewed various medical records as well as Dr. Steckel’s expert affirmation. Dr. Brodherson asserts that the ureteral stent/catheter was placed during the September 12, 1993 surgery and that Dr. Walther’s description of the ureteral stent/catheter as brittle is consistent with it having been placed during that procedure. In addition, Dr. Brodherson maintains that 19-year-old stent fragments may not be readily visualized on a CT scan. Dr. Brodherson avers that leaving the ureteral stent/ catheter for more than six months is a departure from good and accepted medical practice and such departure directly caused plaintiff’s injuries and prompted the resulting surgical procedures. Plaintiff also offers the expert affirmation of Stephen M. Bauer, M.D., a vascular surgeon, wherein he disagrees with Dr. Steckel’s conclusions about the placement of the stent in 1993 and that the location of the scars denotes that the aortic repair was only in plaintiff’s thoracic region.
“The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of medical practice, and evidence that such deviation or departure was a proximate cause of injury or damage. A defendant physician moving for summary judgment in a medical malpractice action has the initial burden of establishing, prima facie, either the absence of any departure from good and accepted medical practice or that any departure was not the proximate cause of the alleged injuries. To rebut a defendant physician’s prima facie showing of his or her entitlement to judgment as a matter of law, the plaintiff must demonstrate the existence of a triable issue of fact through the submission of evidentiary facts or materials.” (Khosrova v Westermann, 109 AD3d 965, 965-966 [2d Dept 2013] [citations omitted].)
“Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a material and triable issue of fact.” (Anyanwu v Johnson, 276 AD2d *219 572, 572 [2d Dept 2000].) Issue finding, not issue determination, is the key to summary judgment. (Krupp v Aetna Life & Cas. Co., 103 AD2d 252 [2d Dept 1984].) In deciding such a motion, the court must view the evidence in the light most favorable to the nonmoving party. (See Kutkiewicz v Horton, 83 AD3d 904 [2d Dept 2011].)
“Summary judgment may not be awarded in a medical malpractice action where the parties adduce conflicting opinions of medical experts (see Barbuto v Winthrop Univ. Hosp., 305 AD2d 623 [2003]; Fotinas v Westchester County Med. Ctr., 300 AD2d 437 [2002]). When experts offer conflicting opinions, a credibility question is presented requiring a jury’s resolution (see Barbuto v Winthrop Univ. Hosp., supra; Halkias v Otolaryngology-Facial Plastic Surgery Assoc., 282 AD2d 650 [2001]). Moreover, contrary to the appellants’ contentions, the opinions of the plaintiffs’ expert were based upon facts in evidence, and were not conclusory or otherwise insufficient.” (Shields v Baktidy, 11 AD3d 671, 672 [2d Dept 2004]; Howard v Kennedy, 60 AD3d 905 [2d Dept 2009]; Berger v Hale, 81 AD3d 766 [2d Dept 2011].)
Contrary to its assertions, plaintiff’s submissions establish a prima facie case against Nyack Hospital. In their reply papers, Nyack Hospital literally and figuratively underscores their assertion that a plaintiff must establish that the alleged departures “more probably than not” caused the resulting injury. An examination of the cases cited in connection with this phrase reveals that all of cases pertained to applications concerning jury determinations based upon proof adduced at trial, which distinguish these cases from the proof required at this stage of litigation.
The parties’ conflicting opinions from their respective medical experts preclude the award of summary judgment in favor of Nyack Hospital. Plaintiff’s expert affirmations are neither conclusory nor insufficient to raise a credibility question requiring determination by a jury. As such, Nyack Hospital’s motion for summary judgment is denied.

. Exhibit L to June 25, 2015 affirmation of Angela M. Ribaudo, Esq.

. June 10, 2015 affirmation of Joph Steckel, M.D., ¶ 35.

. Id. ¶ 37.

. Oct. 15, 2015 affirmation of Michael S. Brodherson, M.D., ¶ 39.

. June 10, 2015 affirmation of Joph Steckel, M.D., ¶¶ 5, 28.