Tufo v Port Chester Operating, LLC. (2025 NY Slip Op 51940(U))

[*1]

Tufo v Port Chester Operating, LLC.

2025 NY Slip Op 51940(U)

Decided on December 9, 2025

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 9, 2025
Supreme Court, Westchester County

Wendy Tufo, as Administratrix of the Estate of 
 MICHAEL GOLDSTEIN, Deceased, Plaintiff,

against
Port Chester Operating, LLC. D/B/A THE ENCLAVE AT RYE REHABILITATION AND NURSING CENTER, Defendant.

Index No. 68008/2022

KRENTSEL GUZMAN HERBERT LLP.
Attorneys for plaintiff
Sheeley, LLP
Attorneys for Defendant

Robert S. Ondrovic, J.

The following papers were considered on the motion by defendant, Port Chester Operating, LLC d/b/a The Enclave at Rye Rehabilitation and Nursing Center ("defendant" or "The Enclave"), for an order, pursuant to CPLR 3211 and/or 3212 granting summary judgment and dismissing plaintiff's complaint/amended complaint with prejudice:
Papers NYSCEF Doc. No.
Notice of Motion, Attorney Affirmation in Support, Statement of
Material Facts, Exhibits A-R and Memorandum of Law 97-123
Attorney Affirmation in Opposition, Exhibits 1-2, Counterstatement of
Material Facts 131-134
Reply Affirmation 135
Plaintiff's Corrected Statement of Material Facts 136
BACKGROUND
Plaintiff Wendy Tufo commenced this action on November 9, 2022, in her capacity as [*2]administratrix of the estate of her uncle, Michael Goldstein, asserting, inter alia, claims of negligence, gross negligence, wrongful death, and violations of the Public Health Law in connection with the care and treatment rendered to the decedent, including during the COVID-19 pandemic. The plaintiff alleges, among other things, that during the decedent's long-term residency at defendant's skilled nursing facility, the decedent was infected with SARS-CoV-2 and developed respiratory distress and hypoxia, which led to his untimely death from COVID-19 pneumonia at Greenwich Hospital on April 20, 2020. 
In support of its motion, defendant argues that it is immune from liability for damages arising from the care and treatment of the decedent during the COVID-19 pandemic pursuant to the New York Emergency or Disaster Treatment Protection Act, repealed by L 2021, ch 96, § 1 (the "EDTPA"). To support this contention, defendant submits the deposition testimony and affirmation of Robert Lambert, L.P.N., who served as The Enclave's Assistant Director of Nursing during the relevant time period and has personal knowledge of the facility's response to the COVID-19 pandemic and the effects on its residents, (NYSCEF Doc. No. 100; 106), the deposition testimony of Abiola Familusi, M.D., The Enclave's former Medical Director (NYSCEF Doc. No. 107), excerpts from The Enclave's infection control policies and procedures, The Enclave's COVID-19 policy, and various state and federal reports, surveys, advisories and guidance issued during the time period at issue (NYSCEF Doc. Nos. 118-122). 
Defendant further contends that, irrespective of the EDTPA, summary judgment is warranted because the evidence establishes that there were no departures from the standard of care in connection with the treatment rendered to the decedent while he was a resident at The Enclave, and in any event, any alleged departures were not the proximate cause of the decedent's alleged injuries. In support of this argument, defendant proffers the expert affirmation of Maria Haydee Lajera, a registered nurse duly licensed to practice in New York State since 1994 who currently serves as the Director of Nursing at Garden Care Center in Franklin Square, New York (NYSCEF Doc. No. 101), the pleadings (NYSEF Doc. Nos. 102-104), plaintiff's deposition testimony (NYSCEF Doc. No. 105), and the decedent's medical records from The Enclave and Greenwich Hospital (NYSCEF Doc. Nos. 109-115),
In opposition, plaintiff argues that the EDTPA was repealed, retroactively, on April 30, 2021 and therefore, defendant cannot avoid liability in this action based on EDTPA immunity. Plaintiff alternatively asserts that even if the repeal did not have retroactive effect, defendant's evidentiary submissions fail to establish that the three requirements for immunity under the EDTPA were met, or that the gross negligence exception to the EDTPA applies. Plaintiff further contends that, notwithstanding the applicability of the EDTPA, defendant has failed to meet its prima facie burden on the claims of medical malpractice, gross negligence, and violations of the Public Health Law. Plaintiff argues that defendant's affirmation and that of defendant's expert merely state in conclusory terms that defendant did not depart from the standard of care. Plaintiff claims that the affirmations also fail to adequately address each of the allegations in the amended complaint and bill of particulars. Lastly, plaintiff contends that the motion should be denied because plaintiff's expert has raised various issues of fact regarding, among other things, defendant's deviation from the standard of care, and causation.
DISCUSSION
On a motion for summary judgment, the court must determine whether triable issues of fact exist or whether the cause of action or defense has been sufficiently established by the [*3]evidence to warrant judgment to a party as a matter of law (CPLR 3212 [b]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). In assessing the record to determine whether there are material issues of fact for trial, the court must view the facts in the light most favorable to the non-moving party (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824 [2014]). Issue finding, as opposed to issue determination, is the key to summary judgment (Krupp v Aetna Life & Cas. Co., 103 AD2d 252, 261 [2d Dept 1984]). 
New York Emergency or Disaster Treatment Protection Act
The EDTPA, as originally effective March 7, 2020, provided health care facilities and professionals immunity from civil and criminal liability for harm arising from acts or omissions in the course of providing services during the COVID-19 emergency if three requirements were met: (1) the health care services were arranged for or provided pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law, (2) the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID-19 outbreak and in support of New York State's directives, and (3) the health care services were arranged for or provided in good faith (Mera v New York City Health and Hosps. Corp., 220 AD3d 668, 669 [2d Dept 2023]; former Public Health Law § 3082 [1]). The only exception to the EDTPA was for those injuries caused by "willful or intentional misconduct, gross negligence, reckless misconduct, or intentional infliction of harm" (former Public Health Law § 3082 [2]).
In addition, the EDTPA "[did] not qualify how treatment must be affected — whether positively, negatively, or otherwise — it merely requires that treatment be impacted" (Holder v Jacob, 231 AD3d 78, 85 [1st Dept 2024] [internal quotation marks and citations omitted]). There is also no requirement that the plaintiff's treatment be uniquely impacted as compared to other patients (Holder, 231 AD3d at 85). Moreover, at the time of its enactment, the EDTPA defined "health care services" to include services "related to the diagnosis, prevention, or treatment of COVID-19; the assessment or care of an individual with a confirmed or suspected case of COVID-19; and the care of any other individual who presented at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration" (Mera, 220 AD3d at 669-670; former Public Health Law § 3081 [5]).
The EDTPA was substantially amended in August 2020, and ultimately repealed in April 2021. However, all four Appellate Divisions of this State have held that the repeal of the EDTPA did not apply retroactively (Hyman v Richmond Univ. Med. Ctr., 239 AD3d 617, 618 [2d Dept 2025]; Hasan v Terrace Acquisitions II, LLC, 224 AD3d 475 [1st Dept 2024]; Whitehead v Pine Haven Operating LLC, 222 AD3d 104 [3d Dept 2023]; Ruth, 209 AD3d 1281). As such, the original version of the EDTPA remains the applicable law for claims by or on behalf of patients, such as the decedent, who were treated from March 7, 2020 until April 6, 2021 (Ruth v Elderwood at Amherst, 209 AD3d 1281 [4th Dept 2022]).
In light of the foregoing, a defendant moving for summary judgment based on EDTPA immunity must establish, prima facie, that (1) the defendant is a health care professional or facility, (2) the defendant was arranging for or providing health care services as defined by the EDTPA (3) the services were provided in accordance with a COVID-19 emergency rule or other applicable law, (4) the services were impacted by the defendant's response to COVID-19, and (5) the services were rendered in good faith and did not amount to gross negligence or recklessness, so as to constitute the sole exception to EDTPA immunity.
Here, defendant has established, prima facie, that all five of these criteria have been met. [*4]First, it is undisputed that defendant, which owns and operates a rehabilitation and nursing care center in Port Chester, New York, is a "health care facility" as defined in Public Health Law § 3081 (3). Second, defendant's proffered affirmations, deposition testimony and medical records show that during the relevant time period, defendant was arranging for or providing services to its patients, including the decedent, related to the diagnosis, prevention, or treatment of COVID-19 and the assessment or care of patients with a confirmed or suspected case of COVID-19. The medical records show that the decedent's specific care plan was updated to include daily monitoring for signs and symptoms of COVID, including screening for temperature, cough and shortness of breath, and various intervention tasks such as good hygiene practices, social distancing, hand washing and respiratory etiquette. Third, as of March 7, 2020 and through the decedent's death on April 20, 2020, The Enclave was providing health care services in accordance with a COVID-19 emergency rule or other applicable law. The Lambert and Lajera affirmations set forth detailed averments regarding defendant's services to its patients during the COVID-19 pandemic in March and April of 2020, which were in accordance with The Enclave's COVID-19, infection control, and disaster and emergency response policies and procedures, and various directives and guidelines published by governing agencies including the Centers for Disease Control and Prevention ("CDC"), the New York State Department of Health ("DOH"). Defendant's submission of Focused Infection Control Covid-19 surveys, performed by the Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS"), also demonstrate that The Enclave was providing health care services in accordance with law or a COVID-19 emergency rule.
With respect to the fourth criterion, the affirmations and deposition testimony establish that the health care services defendant provided to patients, including the decedent, was impacted by defendant's response to COVID-19 in various ways. Specifically, the care rendered to the decedent was impacted by daily COVID-19 monitoring and temperature screening, the use of personal protective equipment, restricted visitations and dining services, enhanced cleaning procedures, COVID-19 screening of staff, specific protocols for suspected and confirmed COVID-19 infected patients, implementation of designated quarantine zones, and staffing challenges due to illness and quarantine. Nurse Lambert specifically avers that throughout the relevant time period, The Enclave's efforts to establish and enforce the enhanced infection control procedures led to the rearrangement and redistributions of PPE, supplies, and staff resources, thereby impacting The Enclave's services to its patients, including the decedent. Lastly, defendant has demonstrated, through the deposition testimony and Lambert affirmation, that defendant rendered health care services during the COVID-19 pandemic in good faith.
Plaintiff's opposition to defendant's prima facie showing of immunity under the EDTPA is insufficient to raise an issue of fact. As an initial matter, the affirmations of plaintiff's counsel and plaintiff's expert are not properly sworn because they do not substantially comply with the required language set forth in CPLR 2106. While the court may nevertheless consider counsel's affirmation to the extent it refers to documentary evidence and deposition testimony, and raises legal arguments therein (Scanlon v Long Beach Pub Sch, 197 AD2d 567 [2d Dept 1993]), the affirmation of plaintiff's expert is inadmissible and of no probative value (Miah v Lugo, 240 AD3d 682, 684 [2d Dept 2025]).
Even if the expert affirmation were admissible, the expert's opinions are conclusory and speculative and often belied by the record, which renders the affirmation insufficient to defeat summary judgment. For example, the expert opines that defendant failed to establish and/or [*5]implement sufficient infection prevention policies and protocols during the decedent's admission to the facility; however, the evidence shows that policies and procedures were not only in place, but continually updated based on state and federal guidance, and regularly circulated to staff to advise them of the standards of professional practice for COVID-19 related care during the pandemic. Furthermore, the expert largely speculates that if defendant knowingly admitted COVID-19 positive patients, if defendant failed to test potential new residents for COVID-19, if defendant failed to isolate new admissions in a designated area before placing them with residents who were not suspected or confirmed COVID-19 positive, and if defendant continued to admit new residents without an adequate number of healthy staff members, then those acts and omissions would be a departure from the applicable standards of care for nursing facilities. Such opinions are nonconclusive and ambiguous, and fail to raise an issue of fact.
The expert also opines that defendant knowingly and recklessly admitted COVID-19 infected patients to the facility despite having insufficient staff to manage patient care under the applicable COVID-19 rules and regulations. This opinion is similarly refuted by the evidence showing that DOH guidance issued in March 2020 advised nursing homes that they could not deny admission or readmission to their facilities solely based on a positive COVID-19 test result, and although The Enclave had staffing challenges, it was never understaffed during the relevant time period. Accordingly, defendant is entitled to summary judgment dismissing the COVID-19 related causes of action, alleged to have occurred between March 7, 2020 and the decedent's death on April 20, 2020, pursuant to the immunity provisions of the EDTPA.
Medical Malpractice and Gross Negligence
As an initial matter, the Court finds that most of the negligent acts alleged by plaintiff against defendant sound in medical malpractice, as they relate primarily to conduct that "constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (Bleiler v. Bodnar, 65 NY2d 65 [1985]). Accordingly, on this motion for summary judgment, defendant is required to "demonstrate the absence of any material issues of fact with respect to at least one of the elements of a cause of action alleging medical malpractice: (1) whether the physician deviated or departed from accepted community standards of practice, or (2) that such a departure was a proximate cause of the plaintiff's injuries" (Rosenthal v Alexander, 180 AD3d 826, 827 [2d Dept 2020] [internal citation omitted]). "Where a defendant physician makes a prima facie showing on both elements, the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element" (Rosenthal, 180 AD3d at 827, quoting Stukas v Streiter, 83 AD3d 18, 25 [2d Dept 2011] [internal quotation marks omitted]).
Here, defendant has met its prima facie burden by demonstrating, through an expert affirmation and annexed medical records, that it did not deviate from accepted standards of medical practice or engage in intentional, reckless or wantonly negligent conduct with respect to the care and treatment rendered to the decedent prior to the pandemic, between January 1, 2019 and March 7, 2020.[FN1]
The defendant has also demonstrated, prima facie, that any alleged [*6]departures were not a proximate cause of the decedent's injuries. In opposition, plaintiff proffers an inadmissible expert affirmation and therefore, fails to raise a triable issue of fact.
Public Health Law § 2801-d and Punitive Damages
"The basis of liability under Public Health Law § 2801-d is neither deviation from accepted standards of medical practice nor breach of a duty of care. Rather, it contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule" (Schwartz v Partridge, 179 AD3d 963, 965 [2d Dept 2020] [internal quotation marks and citations omitted]). The only specific regulations upon which plaintiff's Public Health Law claims are based are the requirements that a nursing facility establish and maintain an infection control program (10 NYCRR 415.19) and a written disaster and emergency preparedness plan (10 NYCRR 415.26 [f]), and accept and retain only those nursing home residents for whom it can provide adequate care (10 NYCRR 415.26 [i] [ 1] [ii]).[FN2]

In this case, defendant has established, prima facie, that The Enclave did not deprive the decedent of any right or benefit owed to him by any alleged regulation, statute, code or rule. As defendant's expert opined, The Enclave rendered appropriate care and treatment to the decedent in accordance with the accepted standards of skilled nursing facility services during the relevant time period and in compliance with all state and federal regulations and at no point was the decedent deprived of his statutory rights or dignity. In opposition, plaintiff has failed to raise a triable issue of fact by failing to submit an expert affirmation in admissible form. And, even if the affirmation were admissible, the affirmation sets forth facts and opinions contradicted by the record, as previously detailed. Accordingly, defendant is entitled to summary judgment dismissing plaintiff's claim for violations of the Public Health Law, which includes plaintiff's claim for punitive damages.
The court has considered the parties' remaining contentions, despite any specific reference thereto, and finds them to be without merit, abandoned,[FN3]
improperly raised for the first time in opposition to the motion, or otherwise rendered moot by this decision and order.
Accordingly, it is hereby
ORDERED that defendant's motion for summary judgment dismissing the complaint is granted.
This constitutes the decision and order of the court.
The Clerk shall mark his records accordingly.
Dated: December 9, 2025
White Plains, New York
HON. ROBERT S. ONDROVIC
Justice of the Supreme Court

Footnotes

Footnote 1:The plaintiff cannot raise, for the first time in opposition to the motion, alleged negligence that occurred on May 31, 2018 when the verified bill of particulars specifies that the alleged negligence solely occurred between January 1, 2019 through April 20, 2020 (NYSCEF Doc. No. 104).

Footnote 2:The remaining Public Health Law violations alleged by plaintiff cannot form the basis of liability because the provision either does not exist (i.e., 42 USC 1395 [i]), only generally refers to the federal rule governing requirements for long term facilities, without specifying the particular provision defendant allegedly violated (42 CFR 483), or merely sets forth the definition of the term "neglect" (10 NYCRR 81.1 [c]).

Footnote 3:Plaintiff abandoned any claims of ordinary negligence, wrongful death, and negligent hiring, retention and/or supervision, to the extent they were pled, by failing to address those allegations in opposition to defendant's motion (Louie's Seafood Rest., LLC v Brown, 199 AD3d 790 [2d Dept 2021]).